## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

SHEILA HOWINGTON         )
                                   )

    *Plaintiff*,                )
                                   )

v.                            )     CIVIL ACTION NO.
                                   )    3:17-CV-00167-TCB-RGV

TROUP COUNY, and DAN WOOTEN,    )
                                   )    JURY TRIAL DEMANDED

    *Defendants*.           )
                                   )
                                   )
                                   )

_____

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

Howard P. Slomka
Georgia Bar No. 652875
SLIPAKOFF & SLOMKA LLP
2859 Paces Ferry Rd. SE. Suite 1700
Atlanta, Georgia 30339
Telephone: (404) 800-4017
Facsimile: (888) 259-6137

## STATEMENT OF FACTS

Plaintiff incorporates by reference her Response to Defendant's Statement of Undisputed Fact and Plaintiff's Statement of Material Facts ("PSOF") filed pursuant to Local Rule 56. All deposition transcript pages, affidavits, or other materials referred to in this memorandum are attached or filed pursuant to Local Rule 56.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman v. AI Transport*, 229 F.3d 1012, (11th Cir.2000). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## SUMMARY OF THE ARGUMENT

In this case, the evidence presented to rebut the movants' evidence demonstrate a clearly decisive dispute. There is a factual dispute about (i) whether

a reasonable woman would object to a video camera pointed directly at her desk, and (ii) whether Plaintiff's objections to the installation of the camera and surveillance program constituted a lack of consent thereof or mere expression of discomfort.  Revocation or lack of consent is necessary to establish a violation of Plaintiff's Fourteenth Amendment rights. These factual disputes constitute a genuine issue about a material fact, for if Plaintiff was the main focus of the surveillance to which she did not consent she certainly had a reasonable expectation of privacy regarding the use of the device.  Applying the statutory and judicial standards to the facts of this case can lead to only one conclusion: Plaintiff's case deserves to be heard on the merits by a jury of her peers, and thus Defendants' motion for summary judgment must be denied.

## ARGUMENT AND CITATIONS TO AUTHORITY

### I. Claims against Wooten individually Should Not be Dismissed.

Plaintiff is suing Defendant Wooten in both his official and individual capacity. Wooten argues that the official capacity claims against him are due to be dismissed because "that claim is duplicative of the suit against the County" (Defendants' Brief at p. 11). This argument fails as a matter of law. It is true that, "because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a

need to bring official-capacity actions against local government officials".  *Busby*

*v. City of Orland*o, 931 F.2d 764, 776 (11th Cir. 1991).  However, simply because

the official capacity claims against Wooten are redundant of those against the

County does not mean they fail to state a claim upon which relief can be granted so

as to justify dismissal.  Accordingly, the claims against Wooten in his official

capacity should remained as stated.

## II.   <u>Plaintiff's Constitutional Rights Were Violated Thus Supporting a 1983 Claim</u>

The Fourth Amendment protects the "right of people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures".

*U.S. Const. amend. IV*.  It has long been established that "the Fourth Amendment

<u>protects people, not places</u>," *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct.

507, 19 L.Ed.2d 576 (1967), and that a person is protected by the Fourth

Amendment when he or she has "a subjective expectation of privacy and the

expectation is one that society is prepared to recognize as reasonable." *Id*. at 361,

88 S.Ct. 507. [1]

---

[1] Moreover, the Supreme Court has held that defendants must have "fair warning" that their actions violate a constitutional right, which requires that they "reasonably can anticipate when their conduct may give rise to liability". *Lanier*, 520 U.S. at 270, 117 S.Ct. at 1227.  Plaintiff has provided such notice.

In the context of government employment, resolution of Plaintiffs' claim requires application of two multi-factor tests set forth by the Supreme Court's plurality opinion and Justice Scalia's concurring opinion in *O'Connor v. Ortega*. 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987).

The first test in *O'Connor* is based on the rejection of the notion that "public employees can never have a reasonable expectation of privacy in their place of work,". See *O'Connor v. Ortega*. 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). First in consideration are "[t]he operational realities of the workplace" in order to determine "whether an employee has a reasonable expectation of privacy" there. *Id*. at 717, 107 S.Ct. 1492. Such determination is made on "a case-by-case basis." *Id*. Secondly, where an employee has a legitimate privacy expectation, an employer's intrusion on that expectation "for non-investigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances." Id. at 725–726, 107 S.Ct. 1492.

The final test from *O'Connor* to determine whether a government employer has violated the Constitutional rights of an employee is provided by Justice Scalia's concurrence. Under this test, the court asks if the government's search would be

"regarded as reasonable and normal in the private-employer context." O'Connor, 480 U.S. at 732, 107 S.Ct. 1492 (Scalia, J., concurring).

## A. The *Operational Realities* of Plaintiff's Office.

Plaintiff worked in a secure, non-public, and often solitary office, although the senior center was a place of gathering for senior citizens and co-workers. Defendants argue incorrectly that Plaintiff had no reasonable expectation of privacy.

While the Court in *O'Connor* recognized that a government employee's office could be "so open to fellow employees or the public that no expectation of privacy [would be] reasonable," Plaintiff's office is not such a space. Her office was a space separated from other areas of the building. It was not open to the public, and it was not visible to the public in a conspicuous location. Nor did the occasional entry of co-workers destroy her reasonable expectation of privacy. As the *O'Connor* plurality and Justice Scalia agreed, "constitutional protection against unreasonable searches by the government does not disappear merely because the government has the right to make reasonable intrusions in its capacity as employer." Id. at 718, 107 S.Ct. 1492 (internal quotation marks omitted). Or, put another way, "privacy does not require solitude." *United States v. Taketa*, 923 F.2d 673 (9th Cir.1991).

Absent the workplace scenario where a government employee's office is so open to others that no expectation of privacy would be reasonable, an employee has a Constitutionally protected right to privacy in the workplace. This right undeniably extends to shared offices. See *O'Connor*, at 731, 107 S.Ct. 1492 (explaining that a "government secretary working in an office frequently entered by other government employees," retains her Constitutional protection against unreasonable searches by the government) (Scalia, J., concurring).  As a threshold matter, it has been established that Plaintiff had a reasonable expectation of privacy in her workplace, free of targeted non-consensual video surveillance by Troup County.

## B. The *Reasonableness* of the Video Surveillance.

Next, for consideration is the second factor under the O'Connor plurality test, i.e., the reasonableness of the search, manifested in this case in the form of video surveillance targeted on the Plaintiff herself. Under the plurality's test, a search is reasonable if: (1) it is justified at its inception; (2) the measures adopted are reasonably related to the objectives of the search; and (3) the measures adopted are not excessively intrusive in light of the circumstances giving rise to the search. *O'Connor*, at 725.

As a general matter, a government employer is permitted to conduct an internal disciplinary investigation of a government employee where there is individualized suspicion. Plaintiff, however, was not subject to video recording for investigative reasons.  Moreover, Plaintiff has stated that her surveillance was not for security reasons, since the two windows in her office were covered by outside cameras. (Plaintiff's Dep., p. 55.)

The severity of video surveillance on employees has been recognized widely. See, e.g., *United States v. Koyomejian*, 970 F.2d 536, 551 (9th Cir.1992) ("[E]very court considering the issue has noted [that] video surveillance can result in extraordinarily serious intrusions into personal privacy."); *United States v. Torres*, 751 F.2d 875, 882 (7th Cir.1984) ("We think it unarguable that television surveillance is exceedingly intrusive."); *United States v. Falls*, 34 F.3d 674, 680 (8th Cir.1994) ("It is clear that silent video surveillance results in a very serious, some say Orwellian, invasion of privacy."); *United States v. Mesa–Rincon*, 911 F.2d 1433, 1443 (10th Cir.1990) ("Because of the invasive nature of video surveillance, the government's showing of necessity must be very high to justify its use."); *United States v. Cuevas–Sanchez*, 821 F.2d 248, 251 (5th Cir.1987) ("[I]ndiscriminate video surveillance raises the specter of the Orwellian state.").

### C.     The *Normality* Under the Private Employer Context.

As previously described, the Scalia's concurrence test to determine whether a government employer has violated the employee's Fourth Amendment rights asks if the government's search would be "regarded as reasonable and normal in the private-employer context." *O'Connor*, 480 U.S. at 732, 107 S.Ct. 1492 (Scalia, J., concurring).  In the private sector, the Plaintiff could sue for the common law tort of invasion of privacy for intrusion upon her seclusion or solitude, since this tort arises from the 'unreasonable intrusion' which would be offensive or objectionable to a reasonable person, into a person's private concerns. See *Johns v. Ridley*, 245 Ga.App. 710, 712(2), 537 S.E.2d 746 (2000).  The video surveillance of Plaintiff would not be regarded as normal in the context of private employment.

In sum, due to the constant nature of the surveillance, and because it occurred in a private area where Plaintiff had to perform non-work activities (like making private phone calls), under either Justice Scalia's O'Connor test or the O'Connor plurality test, the video surveillance was unreasonable and in violation of the Plaintiff's Constitutional rights.

### III.   <u>Plaintiff Did Not Consent to Permanent Surveillance</u>

Voluntariness of consent is determined by looking at the "totality of the circumstances," including factors such as whether the consenting party could refuse consent, the consenting party's awareness of a right to refuse consent, and

the consenting party's education and intelligence. *United States v. Ramirez–Chilel*, 289 F.3d 744, 752 (11th Cir.2002). In this case, Plaintiff expressed her lack of consent to the video recording in at least four occasions. To Wooten in January 2016 when the cameras where installed (Plaintiff's Dep., p. 36.), in April or May 2016 when Plaintiff again told Wooten the camera in her office made her uncomfortable. (Id pp. 32, 87.), and after filing her exit interview around July 29, 2016 (Id. p. 48), and to Howell in May 2016 when she asked him to stop by her office to share her concerns and communicate to him that she was very distraught and having a hard time with the camera being on her all the time.  (Id. at 44.)

Defendants state that Wooten does not recall Plaintiff's objections to the installation of the cameras at the time they were being installed. (Aff. of Dan Wooten, ¶ 11) in support of their contention that Plaintiff's expression of discomfort did not constitute lack of consent. [2] To the extent Plaintiff ever consented to the surveillance targeted on her, which she did not, such consent to activities protected by the Fourth Amendment are not irrevocable, and thus if a person effectively revokes consent, then reliance upon the earlier consent is not

---

[2] "Consent" that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse. *Florida v. Bostick*, 501 U.S. 429, 432, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

justified. See *United States v. Lattimore*, 87 F.3d 647, 651 (4th Cir.1996).[3]   Here, Plaintiff never consented to the video surveillance aiming at her in her office.   If Defendants argue that she did consent, then they raise a disputed issue of fact, sufficient to defeat summary judgment.

## IV.   The County is Liable Under 42 U.S.C § 1983 for Acts of its Policymakers and the Failure to Train Supervisors.

The Motion argues that the County cannot be held vicariously liable for the actions of its employees under a theory of respondeat superior. *Monell v. Dep't of Social Services of City of N.Y.*, 436 U.S. 658, 690-91 (1978). To impose § 1983 liability on a municipality, plaintiff must show: (1) that her constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." See also *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

The County argues that it is not liable under *Monell* or through Wooten as a final policymaker. (Defendants' Brief p. 17) However, Defendants overlook that

---

[3] An individual's right to revoke his consent to search is just as protected by the Fourth Amendment as is the individual's right, in the first instance, to refuse, or limit, permission to search. Whether consent was revoked is similar to determining the scope of the consent given. See *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).

Wooten was the final policymaker controlling the surveillance program and camera placement, and therefore was capable of imputing liability to the County.

Moreover, Defendant states that it has not violated Plaintiff's constitutional rights, and consequently "the court need not reach the issue of the government entity's customs and policies" (*Id* p. 17).  As it was previously described, Plaintiff's Fourth Amendment rights were violated and further inquiry into the County's practices is warranted.

A plaintiff "has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton County*, Ga., 335 F.3d 1326, 1329 (11th Cir. 2003). However, a single decision by a municipal policymaker may constitute an official policy where the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of federal rights also proved fault and causation" *Harvey v. City of Bradenton*, No. 8:04CV1748TEAJ, 2005 WL 3533155, at *10 (M.D. Fla. Dec. 22, 2005).  Thus, municipal liability can be triggered by a single decision when the decision itself is the unconstitutional act. [4]

---

[4] Kennedy v. Clarke County Sch. Dist., No. 3:06-CV-47 (CDL), 2008 WL 203314, at *4-5 (M.D. Ga. Jan. 23, 2008) (holding that a single, unconstitutional decision to

Wooten was the final decisionmaker who set the policy related to the installation and use of the cameras.  There was no substantial administrative review of his actions relating to the use and installation of the cameras, and the County's board and manager ratified the actions.  The practice of the municipality which caused Plaintiff's Constitutional violation was the installation of permanent surveillance on a female employee after repeated denial to grant consent, impinging on the employee reasonable expectation of privacy in her workplace.

## A. The County's Failure to Train Wooten and Supervisors to Cease Surveillance After Revocation of Consent Was Presumptive Policy.

In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.  To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the untrained employees come into contact." *City of Canton v. Harris,* 489 U.S. 378, 387 (1989).  Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Id* at 410.

---

reject the plaintiff on the basis of race would establish liability for the plaintiff's constitutional injury).

When Plaintiff complained to her supervisors and later stated in her exit interview that she had been subjected to surveillance monitoring without consent, the Troup County policymakers were on actual and constructive notice that a particular omission in their training program causes County employees to violate citizens' constitutional rights. The County's "policy of inaction" in light of Plaintiff's notice that her right to privacy was being violated by the unconsented video monitoring program was the functional equivalent of a decision by the city itself to violate her Fourth Amendment rights under the Constitution. Municipal liability under § 1983 attaches where a deliberate choice to follow a course of action is made from among various alternatives by the relevant officials. The obvious choice which was ignored and refused to be implemented by the County during Plaintiff's employment, was the termination of the targeted surveillance on her.

## V. Defendant Wooten Does Not Enjoy Qualified Immunity.

Defendants argue that Wooten enjoys qualified immunity from Plaintiff's constitutional claim since he was acting within the scope of his discretionary authority in connection with the acts giving rise to the Complaint. (Defendants' Brief p. 18).

The Eleventh Circuit has explained that "instead of focusing on whether the acts in question involved the exercise of actual discretion, courts assess whether they are of a type that fell within the employee's job responsibilities." *Holloman v. Harland*, 370 F.3d 1252, 1265-66 (11th Cir. 2004).  This is assessment is carried out through a two-pronged inquiry: "we ask whether the government employee (a) was performing a legitimate job-related function (b) through means that were within his power to utilize. *Id*.   Even if Wooten was performing a job-related action when he monitored Plaintiff, he was without authorization from Plaintiff to continue the monitoring after she decline to give consent to be surveilled.

### A. <u>Wooten's Job-Related Functions.</u>

In reference to this first inquiry, it must be determined whether the defendant's discretionary duties included installation of video surveillance and related monitoring.  Defendants argue that Wooten was performing duties within the scope of his authority when he had security cameras installed and he "was responsible for ensuring the security of the center, as well as the safety of the employees working at the center and the participants who engaged in recreational activities there".  (Defendants' Brief p. 20). However, Defendants have offered no evidence whatsoever that it was Wooten's job-related function to make the final decision upon receiving a complaint from an employee to either remove the

camera or continue the surveillance.  Defendants have not introduced any evidence showing the detailed scope of Wooten's job description assigned by the County, to discover whether it was part of his duties to monitor and arrange the distribution of the surveillance system.

## B. <u>The Authorization to Continue Surveillance on Plaintiff.</u>

Assuming *arguendo* that Wooten engaged in a legitimate job-related function when he caused the installation, monitored and subsequently ignored Plaintiff's request to cease the surveillance, it is then necessary to turn to the second prong of the test and determine whether he was executing that job-related function—that is, pursuing his job-related goals—in an authorized manner. Employment by a local, county, state, or federal government is not a carte blanche invitation to push the envelope and tackle matters far beyond one's job description or achieve one's official goals through unauthorized means. Pursuing a job-related goal through means that fall outside the range of discretion that comes with an employee's job is not protected by qualified immunity. *Holloman, supra,* at 1267. Wooten was not authorized by the County to monitor employees without their consent, nonetheless he persisted in recording Plaintiff even after her numerous declinations of consent.

## VI.    Defendant Wooten Did Violate Plaintiff's Constitutional Rights.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Sexual harassment can constitute discrimination based on sex for purposes of Title VII. See *Mendoza v. Borden, Inc*., 195 F.3d 1238, 1244–45 (11th Cir.1999) (en banc). Generally, sexual harassment comes in two forms: harassment that does not result in a tangible employment action (traditionally referred to as "hostile work environment" harassment), and harassment that does result in a tangible employment action (traditionally referred to as "quid pro quo" harassment). See *Burlington Industries, Inc. v. Ellerth*, 524 U.S. S.Ct. 2257, L.Ed.2d 633 (1998).

All harassment by co-workers necessarily falls into the first *Ellerth* class, as co-workers cannot take employment actions against each other. Harassment by supervisors, on the other hand, can fall into either category. This distinction is important because if Wooten were a co-worker, rather than Plaintiff's supervisor, Plaintiff's claim can only be for hostile environment or non-tangible employment

action harassment. Since Wooten was a supervisor, Plaintiff's claim is to be construed as one for quid pro quo or tangible employment action harassment.[5]

To demonstrate sexual harassment, Plaintiff must show: (1) that she belongs to a protected group, (2) that she has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature (3) that the harassment was based on her sex (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment and (5) a basis for holding the employer liable. See *Mendoza*, 195 F.3d at 1245. The parties do not dispute that Plaintiff belongs to a protected group (women) and it cannot be disputed that Wooten's actions and comments towards Plaintiff were based on her sex, especially when uttering statements such as she should "learn to like becoming a movie star" and that she should "do a song and dance" for the Board of Commissioners.  The remaining factors are analyzed as follows:

---

[5] Plaintiff has alleged a Fourteenth Amendment equal protection and retaliation claim under the theory that the security camera in her office created a sexually hostile work environment, which caused her to resign. But even without the First Amendment claim, Defendant's actions, which are both subjectively and objectively hostile to Plaintiff support a §1983 Claim.

### i.   Plaintiff was Subjected to Pervasive and Unwelcome Sexual Harassment.

The second and fourth factors listed in *Mendoza* are intertwined. Harassment is severe or pervasive for Title VII purposes only if it is <u>both</u> subjectively and objectively severe and pervasive. *Mendoza*, 195 F.3d at 1246.

### a.   Plaintiff Had a Subjectively Severe Perception of the Non-Consensual Video Surveillance and Slurs by Wooten.

Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and pervasive. Plaintiff has testified that the constant surveillance caused her stress in her life and marriage (Plaintiff's Dep., p. 36.). In May 2016 when she again complained to Howell she expressed to him that she was very distraught and having a hard time with the camera being on her all the time.  (Id. at 44.) Plaintiff had a subjective perception of the severe nature of the non-consensual video surveillance and aggravating comments by Wooten.  Defendant cannot dispute this fact.

### b.   A Reasonable Female in Plaintiff's Position Would Consider the Sexually Hostile Environment as Objectively Pervasive.

Harassment is objectively severe and pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe and pervasive. When determining whether harassment is objectively severe and pervasive, courts

consider "the frequency of the conduct," "the severity of the conduct," "whether the conduct is physically threatening or humiliating, or a mere offensive utterance," and "whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246.   In the case at bar, there is no doubt Plaintiff subjectively perceived Wooten's behavior as harassing. Turning to the four objective factors, Plaintiff will only consider the factors involved in her targeted video surveillance without her consent, which caused her later forced resignation.   Under the *Mendoza* test, the <u>frequency</u> of the conduct in question was at its most heightened severity (Plaintiff was monitored at all hours during her working days); the conduct was <u>severe</u> (it involved the violation of Plaintiff's constitutional right to privacy by recoding her without consent); the conduct was <u>humiliating</u> (Plaintiff's was humiliated by Wooten's decision to continue the targeted recording even after she declined to consent to Wooten and Howell); and the conduct <u>interfered</u> with Plaintiff's job performance (she could no longer tolerate Wooten's surveillance, who was a critical part of management). Since Wooten's conduct towards Plaintiff of recording her after express denial of consent was sufficiently severe or pervasive such that it falls within the definition of sexual harassment, the analysis should turn as to whether the Count may be liable for this harassment.

### ii.      Troup County is Liable for Wooten's Harassment.

The County is liable to Plaintiff for Wooten's harassment because (1) Wooten was Plaintiff's supervisor; and (2) Wooten took a tangible employment action against Plaintiff as a result of the sexual harassment. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). [6] A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. S.Ct. 2257, 141 L.Ed.2d 633 (1998).

### VII.   Plaintiff Was Constructively Discharged as She was Forced to Resign as Consequence of the Hostile Work Environment.

Defendants posit that Plaintiff's allegations fall short of establishing a hostile environment and the required pervasive conduct by employer before finding that a hostile work environment existed, and they consequently argue that Plaintiff cannot show that she was constructively discharged. (Defendants' Brief p. 22)  Further, as evidence intended to show absence of hostility Defendants assert that Wooten asked Plaintiff to reconsider her decision to resign. What Defendants

---

[6] To the extent that Troup County claims that Wooten was not Plaintiff's direct supervisor, the county remains liable since it had actual notice or should have known of the harassment after Plaintiff's complaints to Howell and failed to take remedial action." *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir.2000).

fail to consider is that Plaintiff was an active member of the local community and has strong ties to the community where the events took place.  Plaintiff was afraid that her reputation was going to be smeared in such close-knit community, if she had resigned with boisterous accusation of the sexual harassment.  Plaintiff tried to maintain a harmonious environment (Plaintiff's Dep., p. 49.)  Plaintiff declined Wooten's request to withdraw her resignation, because of her subjective feeling of pervasive harassment she suffered when the surveillance did not cease upon her repeated complaints.

### VIII. <u>Defendant Wooten, in His Individual Capacity, Does Not Enjoy Sovereign Immunity from Plaintiff's State Law Claims.</u>

In Georgia, county employees like Wooten generally enjoy official immunity from suits alleging personal liability in tort for performance of official functions. See *Eshleman v. Key*, 297 Ga. 364, 774 S.E.2d 96, 98 (2015); see also Ga. Const. art. I, § 2, para. IX(d). Under this immunity, a state official may not be held liable for injuries caused through his performance of discretionary functions unless he acts "with actual malice or with actual intent to cause injury." Ga. Const. art. I, § 2, para. IX(d). Here, Wooten acted with actual malice in continuing the video surveillance of Plaintiff after she had expressed her denial to consent.

In the context of Georgia's official immunity doctrine, "actual malice requires a deliberate intention to do wrong." *Merrow v. Hawkins*, 266 Ga. 390, 467

S.E.2d 336, 337 (1996). This is "ill combined with the intent to do something wrongful or illegal." *Adams v. Hazelwood*, 271 Ga. 414, 520 S.E.2d 896, 898 (1999). Wooten's subjective intent is most certainly a disputed fact here. There is a reasonable inference that Wooten continued the surveillance and refused to end the recording to retaliate against Plaintiff for reporting to Howell and other co-workers that Wooten was remotely monitoring her and otherwise violating her constitutional rights. Plaintiff's allegations create a reasonable inference, that Wooten acted with actual malice in continuing the surveillance on her desk, after she had declined to consent. The objectionable video surveillance of Plaintiff without consent led to her complaint to Wooten's superiors, but not to his removal of the camera. These allegations suggest a deliberate intention to do wrong - that is, actual malice by Wooten.

### IX. Defendant Wooten Violated Plaintiff's Right to Privacy.

Defendant Wooten in his individual capacity argues that Plaintiff cannot succeed in her tort claim for intrusion upon her seclusion or solitude because there was no intrusion into her private life and she admits she has no evidence she was placed in a false light. (Defendants' Brief p. 32) Defendant is mistaken in the assumption that surveillance without consent of Plaintiff at her workplace is not a violation of her right to privacy. The tort of intrusion involves an unreasonable

and highly offensive intrusion upon another's seclusion. Georgia courts have long recognized the form of invasion consisting of intrusion upon physical solitude or seclusion analogous to a trespass in plaintiff's home and other quarters. See *Kobeck v. Nabisco, Inc., 166* Ga.App. 652, 305 S.E.2d 183, 185 (1983).  In the Eleventh Circuit, it has previously held that there can be an intrusion upon seclusion in the workplace in certain instances, such as when an employee looks up a co-worker's skirt. See Ver*non v. Medical Management Assoc. of Margate, Inc.*, 912 F.Supp. 1549 (S.D.Fla.1996).  Defendant states in support of its position that the camera in question was positioned to take in the windows – possible points of entry by an intruder – not to focus on her desk.  However, the recordings were erased, and the camera was later removed from the room, leaving no available evidence to validate Defendant's statements, which are plainly at odds with those of the Plaintiff. Wooten also suggests that if the camera made Plaintiff uncomfortable she could have rearranged her office and moved her desk, ignoring the fact that Plaintiff had not consented to the surveillance. The onus was on the County and Wooten to heed to Plaintiff's denial of consent. Moreover, Plaintiff testified that there was not any possible way for her to rearrange the desk to where she wouldn't be on camera, as she couldn't sit in the opposite corner of her office otherwise she would block the door. (Plaintiff's Dep., at 87).

### X. **Plaintiff Is Entitled to Recover Punitive Damages from Wooten in His Individual Capacity.**

Plaintiff is suing Defendant Wooten both in his official and individual capacity and has proved the malice required to recovered said damages, as described above. The constant video surveillance of Plaintiff without her consent in retaliation to her denunciation to members of staff, was enough to cause the objective harm which would deter a person of ordinary firmness from protecting her Constitutional rights.   This fact shows Wooten's deliberate intention to do wrong, entitling Plaintiff to recover punitive damages.


### CONCLUSION

For the foregoing reasons, Defendants are not entitled to summary judgment on any of Plaintiff's claims.

Respectfully submitted this 9th day of July 2018.


By:   /s/  Howard P. Slomka, Esquire
Georgia Bar #652875
2859 Paces Ferry Rd. SE.
Suite 1700
Atlanta, Georgia 30339
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| | |
|---|---|
| SHEILA HOWINGTON | ) |
| | ) |
|    *Plaintiff*, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. |
| | )   3:17-CV-00167-TCB-RGV |
| TROUP COUNY, and DAN WOOTEN, | ) |
| | )   JURY TRIAL DEMANDED |
|    *Defendants*. | ) |

## CERTICATE OF SERVICE

I hereby certify that on July 9, 2018, I electronically filed the foregoing pleading with the Clerk of the Court using CM/ECF system, which will automatically send notice to: fclay@chrkglaw.com.

## SIGNATURE AND CERTIFICATE OF COMPLIANCE

I hereby certify that this brief has been prepared in compliance with N.D. Ga. L.R. 5.1. The pleading does not exceed 25 pages pursuant to L.R 7.1D.

Respectfully submitted this 9th day of July 2018.

By:   /s/  Howard P. Slomka, Esquire
Georgia Bar #652875
2859 Paces Ferry Rd. SE. Suite 1700
Atlanta, Georgia 30339
*Attorney for Plaintiff*