# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# NEWNAN DIVISION

| | | |
|---|---|---|
| SHEILA HOWINGTON | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 3:17-CV-00167-TCB-RGV |
| TROUP COUNY, and DAN WOOTEN, | ) | |
| | ) | JURY TRIAL DEMANDED |
| *Defendants*. | ) | |
| | ) | |

## PLAINTFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

Plaintiff respond to Defendants' Statement of Undisputed Material Facts ("Statement"), filed in support of their Motion for Summary Judgment (Doc. 21-2) pursuant to Rule 56(1)(B)(2) of the Local Rules of the United States Norther District and submits the foregoing. This response is designed solely to respond to the Defendants' statements which are disputed.  Plaintiff maintains that there are genuine issues of material fact with respect to the grounds which Defendants claim entitle them to summary judgment. The paragraph numbers for these Responses refer to the corresponding numbers in Defendants' Statement:

STATEMENT: When Plaintiff began working for the County, there were no security cameras at her site, but she knew there had been break-ins at the facility before she started working. (Plaintiff's Dep., pp. 16, 18-19)

ANSWER: Disputed.  Plaintiff was told that there had been break-ins before she started working but she didn't have any first-hand knowledge of any break-ins. (Plaintiff's Dep., pp. 20).

STATEMENT: Plaintiff was present at the Hogansville facility when the cameras were installed in January 2016. (Plaintiff's Dep., at 21, 43.) There were 13 or 14 cameras total, some on the outside of the facility, and some on the inside. (Id. at 22.)

ANSWER: Undisputed, subject to clarification. From all the installed cameras, the only one set up in an office was placed in Plaintiff's room aimed at her. The interior cameras were placed in the public dining area; one facing the entranceway; one in the breakroom where Plaintiff, her co-workers, and two inmates had lunch1; one in the multi-purpose room; one in a side game room; one focusing from the main dining room to upstairs, where there were doors and windows; one in the TV room; one in part of the kitchen area by the sinks and refrigerator; and one in Plaintiff's office. (Plaintiff's Dep., pp. 25-26.) (Plaintiff's Dep., at 26)

STATEMENT: When the camera in Plaintiff's office was installed, Wooten suggested it face the closet door, where the money was kept. (Wooten Aff., ¶ 6.) The installer, however, said it would be better to aim the camera toward the windows, which were potential access points for an intruder, because there would be a better chance of capturing the intruder's face, so Wooten agreed. (Id.; Aff. of Peter Bissett, ¶¶ 4-5.)

ANSWER: The statement is disputed on the ground that it is based on, or constitutes, hearsay inadmissible for the truth of the matter asserted. Plaintiff was not part of that conversation. (Plaintiff's Dep., at 28).

STATEMENT: Because Plaintiff's desk sat between the two windows, part of it was captured in the camera's view. (Plaintiff's Dep., pp. 28, 55-56; Wooten Aff., ¶ 6, Bissett Aff., ¶ 8.) Unbeknownst to Plaintiff, Wooten, too, has a security camera in his office at the LaGrange site. (Plaintiff's Dep., p. 68; Wooten Aff., ¶ 7.) That camera is intentionally focused on his desk and the window in his office because he has documents in his desk that contain participants' private information and the window is a potential point of intrusion. (Wooten Aff., ¶ 7.)

ANSWER: Disputed to the extent Defendants' characterization of the cited testimony differs from its actual content and implies that Wooten's camera in LaGrange was intentionally focused on his desk, while Plaintiff's camera was not intentionally focused on her desk, instead was partly unintentionally captured.

Plaintiff testified that the two windows outside her office were covered by outside cameras, and that she did not think the camera in her office was installed for security reasons. (Plaintiff's Dep., p. 55.) To the contrary, Plaintiff would stay late in her office and alone (Plaintiff's Dep., at 27), knew that other people other than Wooten had access to the live video surveillance system.

STATEMENT: Plaintiff at no time ever specifically asked or told Wooten to remove the camera; she merely said she was uncomfortable. (Plaintiff's Dep., p. 51.)

ANSWER: Disputed. Plaintiff did not merely say she was uncomfortable. She voiced her concern to Wooten before the cameras were installed that it was against her wishes a camera being installed in her office. (Plaintiff's Dep., p. 36.). Plaintiff felt that other areas needed cameras, for instance, the lady that worked at the front desk that took money in, she was the first person to receive the money, she didn't have a camera on her. Id.

STATEMENT: Around the time she discovered she needed to have surgery, Plaintiff gave notice of her resignation via an email submitted to Wooten, dated July 18, 2016, which stated, in part: "Although this has been a difficult decision to make, I have been offered an opportunity that I believe will help me reach my long-term goals. … I enjoyed being a part of this organization and am thankful for

the opportunities you have given me during my time here." (Plaintiff's Dep., pp. 46, 60-61 & Ex. 1, attached thereto.)

ANSWER: Disputed to the extent Defendants' characterization of the cited testimony differs from its actual content and implies that Plaintiff resigned when she discovered she had to have surgery or as consequence of such procedure.

STATEMENT: It was not until later, while Plaintiff was working out her notice, that she told Wooten he should move or remove the camera in her office. (Plaintiff's Dep., pp. 49, 78; Wooten Aff., ¶ 14.) Wooten asked her if the camera had anything to do with her resigning, and she said no. (Wooten Aff., ¶ 14.)

ANSWER: Disputed to the extent Defendants' characterization of the cited testimony differs from its actual content and implies that Plaintiff first expressed her lack of consent to the installation of the cameras after she had resigned. She voiced her concern to Wooten while the cameras were being installed in January 2016 saying that it was against her wishes that cameras were being installed in her office. (Plaintiff's Dep., p. 36.), and later in May 2016 when she asked Don Howell to stop by her office to share her concerns and communicate to him that she was very distraught and having a hard time with the camera being on her all the time. (Id. at 44.)

STATEMENT: Plaintiff never submitted anything in writing about the camera until she stopped working. (Plaintiff's Dep., p. 48 & Ex. 2.)

ANSWER: Disputed to the extent Defendants' characterization of the cited testimony differs from its actual content and implies that Plaintiff was required or asked to submit in writing her lack of consent to the cameras being installed, after she had verbalized her disagreement on January and May of 2016 to both Wooten and Howell, as well as other co-workers. (Plaintiff's Dep., p. 36.). Moreover, Plaintiff testified that the surveillance caused her stress in her life and marriage because her husband was livid that another male close in age could put a camera on her, situation which a normal person would not tolerate. (Id. p. 55.).

STATEMENT: On either her last day of work, or shortly thereafter, Plaintiff completed an exit interview questionnaire. When asked what her relationship was like with management, she responded, "Dan [Wooten] is a great guy, but has a problem with the cameras." (Ex. 2 to Plaintiff's Dep.) Still, she said she would recommend Troup County as a good place to work for her friends and family. (Id.)

ANSWER: Undisputed, subject to clarification. Plaintiff stated that she had hesitated about reporting Wooten in her exit report because she likes to not rock the boat and likes to keep harmony. (Plaintiff's Dep., p. 49.)  Plaintiff further clarified that she spoke with Wooten in person again and told him she had a recommendation for him that the next person maybe they don't have a camera on them. Id.

STATEMENT: Had he known before that the camera bothered Plaintiff, he would have moved or repositioned it. (Wooten Aff., ¶ 15.)

ANSWER: Disputed, as incongruent with the realities of the case. Wooten was confronted in person at least three times by Plaintiff showing her lack of consent to the installation of the cameras: in January 2016 when the cameras where installed (Plaintiff's Dep., p. 36.), in April or May 2016 when Plaintiff again told Wooten the camera in her office made her uncomfortable. (Id pp. 32, 87.), and after filing her exit interview around July 29, 2016 (Id. p. 48).

STATEMENT: The cameras do not record audio, even though Plaintiff heard from an inmate that the installer's son told another inmate that the cameras did have audio capabilities. (Bissett Aff., ¶ 3)

ANSWER: Disputed.  Defendants have not provided the model and make of the cameras utilized to certify by their user manual if they have sound capabilities. The camera installer asserts that a portion of Plaintiff and her desk were caught in the camera angle.  (Bissett Aff., ¶ 8)

STATEMENT: Plaintiff never tried to rearrange her office so that she was not in the direct line of the camera. (Plaintiff's Dep., p, 87.)

ANSWER: Disputed to the extent Defendants' characterization of the cited testimony differs from its actual content and implies that Plaintiff could have rearranged her desk but refused to do so.  Plaintiff testified that there wasn't really

any way to rearrange it to where she wouldn't be on camera, and she couldn't sit in the opposite corner because that's where the door was. (Plaintiff's Dep., at 87).

Respectfully submitted this 9th day of July 2018.

By: /s/ Howard P. Slomka, Esquire
Georgia Bar #652875
2859 Paces Ferry Rd. SE.
Suite 1700
Atlanta, Georgia 30339
*Attorney for Plaintiff*